Kyle Gurwell (SBN 289298)
**LAW OFFICE OF KYLE GURWELL**
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245
kng@lawofficekg.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| Steven Prescott, individually and on behalf of all others similarly situated, | Case No. 5:23-cv-02983 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ricola USA, Inc., | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Ricola USA, Inc. ("Defendant") manufactures cough suppressant and oral anesthetic lozenges "Made With Swiss Alpine Herbs" under the Ricola brand ("Product").

## I. HERBAL PRODUCTS MARKET

2. The past thirty years has seen a steep increase in consumer consumption and usage of products containing herbal extracts.

3. During this time, eighty percent of adults have used over-the-counter ("OTC") drug products containing herbal ingredients at some point for their healthcare needs over pharmaceutical alternatives.

4. According to Mintel, the herbal remedies market is over $10 billion per year and growing at over four percent per year.

5. Almost half of Americans report using herbal remedies in the prior twelve months.

6. Sixty-five percent of younger parents regularly select products with herbal ingredients for themselves and their children.

7. This has caused the pharmaceutical industry to investigate more ways to use herbal ingredients in OTC products.

8. Herbal ingredients are increasingly incorporated into OTC categories, including external pain relieving rubs, cough suppressants, muscle relaxants, digestive aids, and oral care.

9. Herbal products are used by consumers to address the same issues traditional OTC products are, including common colds, coughs, muscle soreness and aches, sleep issues, and stress.

## II. REASONS FOR INCREASE IN DEMAND FOR HERBAL PRODUCTS

10. The reasons for increased usage of herbal products are several.

11. First, numerous consumers are better able to tolerate products based on herbal ingredients than synthetic ones.

12. Second, the resurgence in popularity of alternative medicine systems like Ayurveda, which rely heavily on herbal ingredients, has made consumers seek out products made with similar ingredients.

13. Third, a growing number of consumers believe that the American medical and pharmaceutical system overuse traditional medications and seek to reduce their usage of standard prescriptions.

14. Fourth, many consumers believe that herbal ingredients are more potent and less harmful than man-made ingredients.

15. The Coronavirus pandemic further increased consumer adoption of products containing herbal ingredients as another layer of protection from this disease.

### III. REPRESENTATIONS THAT EFFECTIVENESS DUE TO HERBAL INGREDIENTS IS MISLEADING

16. Despite the front label representations of "Original Herb Cough Drops," "Cough Suppressant," "Oral Anesthetic," "Effective Relief," "Made With Swiss Alpine Herbs," pictures of ten herbs of peppermint, elder, wild thyme, horehound, hyssop, mallow, sage, linden flowers, lemon balm and thyme and a picture of an amber lozenge, the Product's therapeutic effects are not provided by any of these pictured herbs.

17. This is shown through a review of the Drug Facts on the back label, which identify menthol as the only active ingredient.

**Drug Facts**

Active Ingredient (in each drop) | Purposes
Menthol, 4.8 mg ............... Cough suppressant, Oral anesthetic

**Uses** temporarily relieves:
• cough due to a cold or inhaled irritants • occasional minor irritation and pain due to sore throat or sore mouth

**Warnings**
Sore throat warnings: • if sore throat is severe, persists for more than 2 days, is accompanied or followed by fever, headache, rash, swelling, nausea, or vomiting, consult a doctor promptly. These may be serious. • do not use in children under 6 years of age unless directed by a doctor.

Ask a doctor before use if you have • persistent or chronic cough such as occurs with smoking, asthma, or emphysema • cough accompanied by excessive phlegm (mucus)

Stop use and ask a doctor if • cough persists for more than 1 week, tends to recur, or is accompanied by fever, rash, or persistent headache. These could be signs of a serious condition. • sore mouth does not improve in 7 days • irritation, pain, or redness persists or worsens

Keep out of reach of children.

**Directions**
• adults and children 6 years and older: dissolve 2 drops (one at a time) slowly in the mouth. Do not bite or chew. Repeat every 2 hours as needed or as directed by a doctor
• children under 6 years: ask a doctor

**Other Information** protect from heat and moisture

**Inactive Ingredients** color (caramel), extract of a Ricola herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme), natural flavor, starch syrup, sugar

**Active Ingredient** (in each drop)
**Menthol**, 4.8 mg

**Inactive Ingredients** color (caramel), extract of a Ricola **herb mixture (elder, horehound, hyssop, lemon balm, linden flowers, mallow, peppermint, sage, thyme, wild thyme)**, natural flavor, starch syrup, sugar

18. An active ingredient means any component intended to provide a pharmacological

or direct effect in the mitigation or treatment of any condition. 21 C.F.R. § 210.3(b)(7).

19. However, the herbs promoted on the front label are exclusively "Inactive Ingredients."

20. Inactive ingredients are defined as any component other than active ingredients. 21 C.F.R. § 210.3(b)(8).

21. All non-prescription drugs are required by the Food and Drug Administration ("FDA") to contain "as one of its principal features a statement of the identity." 21 C.F.R. § 201.61(a).

22. Since the Product contains ingredients that are used to treat concurrent symptoms, its statement of identity is required to include the name of the drug, menthol, and identify its function as an oral anesthetic and cough suppressant. 21 C.F.R. § 341.70(b).

23. Competitor herbal lozenges from TopCare, Target (Up&Up), Dollar General and Walmart (Great Value) do not represent or imply their herbal ingredients are responsible for their cough suppressant and oral anesthetic effects, because they contain statements of identity such as "Menthol Cough Suppressant/Oral Anesthetic," or like the Target product, prominently discloses the active ingredient of menthol.

 




24. While the active and inactive ingredients are listed on the back label, the Product's (1) front label emphasis on its herbal ingredients, relative to itself and in the context of similar products and (2) failure to disclose, as required, the presence of menthol, causes consumers to expect these inactive herbal ingredients have a therapeutic benefit.

25. Though the front label is allowed and required to identify the Product as a cough suppressant and oral anesthetic, the failure to include the drug ingredient of menthol renders its labeling misleading to consumers.

26. Consumers seeing the Product's front label will expect its cough suppressant and oral anesthetic functionality will be provided by its inactive herbal ingredients.

27. Competitor products contain substantially similar ingredients to the Product.

28. Consistent labeling of products containing substantially identical ingredients helps consumers to make informed choices in a hurry in the context of shopping.

## PARTIES

29. Plaintiff Steven Prescott is a citizen of Santa Cruz, Santa Cruz County, California.

30. Defendant Ricola USA, Inc. is a New Jersey corporation with a principal place of business in Parsippany, Morris County, New Jersey.

31. Ricola was founded almost a hundred years ago in the shadow of the Swiss Alps.

32. The original Ricola lozenge was a potent therapeutic combination of Swiss herbs that was developed based on centuries of local knowledge, passed down orally through the rural mountainside communities.

33. For many decades, the Ricola lozenges were able to provide therapeutic benefits based on its unique blend of Swiss Alpine herbs.

34. In October 2021, Ricola revealed the results of its strategic review of its branding and marketing.

35. The result was the claim that its products are "Made With Swiss Alpine Herbs."

36. The Product is available to consumers from grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

37. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Grocery Outlet, in and around Santa Cruz, CA, between July 2020 and May 2023, and/or among other times.

38. Plaintiff believed and expected the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients because that is what the representations and omissions said and implied, on the front label and/or the absence of any reference or statement elsewhere on the Product.

39. Plaintiff seeks to purchase OTC and other products which contain herbal ingredients that contribute to those products' functionality.

40. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

41. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $3.99 per 21 lozenges, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

42. Plaintiff bought the Product at or exceeding the above-referenced price.

43. Plaintiff paid more for the Product than he would have had he known the representations and omissions were false and misleading, or would not have purchased it.

44. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

45. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

46. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its attributes, features, and/or composition.

47. Plaintiff is unable to rely on the representations not only of this Product, but other similar cough suppressant and oral anesthetic lozenges, because he is unsure whether those representations are truthful.

## JURISDICTION AND VENUE

48. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

49. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

50. Plaintiff is a citizen of California.

51. Defendant is a New Jersey corporation with a principal place of business in New Jersey.

52. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

53. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years with the labeling shown here in thousands of grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online locations across the State.

54. Venue is in this District because a substantial part of the events or omissions giving

rise to these claims occurred in Santa Cruz County, including Plaintiff's purchase and/or use of the Product and awareness and/or experiences of and with the issues described here.

55. This Court has personal jurisdiction over Defendant because it transacts business within California and sells cough suppressant and oral anesthetic lozenges to consumers within California.

### Divisional Assignment

56. Pursuant to Civil L.R. 3-2(c) and (e), this Action should be assigned to the San Jose Division. This assignment is because a substantial part of the events or omissions giving rise to these claims occurred in Santa Cruz County, including Plaintiff's purchase and/or use of the Product and awareness and/or experiences of and with the issues described here.

### CLASS DEFINITION AND ALLEGATIONS

57. Plaintiff brings this matter on behalf of himself and those similarly situated.

58. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **California Class:** All persons in California who purchased the Product during the statutes of limitations for each cause of action alleged.

59. Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

60. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

61. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

62. Plaintiff is an adequate representative because his interests do not conflict with other members.

63. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

64.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

65.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

66.     Plaintiff seeks class-wide injunctive relief because the practices continue.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq.***

67.     Plaintiff incorporates all preceding paragraphs.

68.     California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or practice."

69.     Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

    a.     21 U.S.C. § 352, which deems drugs misbranded when the label contains a statement that is "false or misleading in any particular";

    b.     21 C.F.R. § 201.61(a), which requires a truthful, accurate and non-misleading statement of identity which identifies a product's active ingredient; and

    c.     21 C.F.R. § 341.70(b), which requires its statement of identity is required to include the name of the drug, menthol, and identify its function as an oral anesthetic and cough suppressant.

70.     Defendant's conduct is "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), and Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").

71.     Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

    a.     Section 110111 (adopting all FDA nonprescription drug regulations

as state regulations);

b. Section 111330 ("Any drug or device is misbranded if its labeling is false or misleading in any particular.");

c. Section 111345 ("Any drug or device is misbranded if any word, statement, or other information required by or under this part to appear on the label or labeling is not prominently placed on the label or labeling with conspicuousness, as compared with other words, statements, designs, or devices in the labeling, and in terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.."); and

d. Section 111355 ("(a) Any drug is misbranded unless its label bears, to the exclusion of any other nonproprietary name except the applicable, systematic chemical name or the chemical formula, all of the following information: (1) The established name of the drug, if any..").

72. Each of the challenged statements made and actions taken by Defendant as described herein violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

73. Defendant's conduct was and continues to be unfair and fraudulent because it made materially false representations and omissions that cause(d) consumers to believe the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

74. Defendant made express and implied representations that the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

75. Defendant is aware of the representations and omissions it has made about the Product and its capabilities to function as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

76. Had Plaintiff been aware of Defendant's practices, he would not have purchased the

Product or paid as much if the true facts had been known, suffering damages.

77. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence corrective advertising.

**SECOND CLAIM**
**Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500,** *et seq.*

78. The FAL prohibits "mak[ing] any false or misleading advertising claim."

79. Defendant makes "false [and] misleading advertising claim[s]" by deceiving consumers about the extent to which the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

80. In reliance on this false and misleading advertising, Plaintiff purchased and used the Product without knowledge it did not function as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

81. Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

82. Plaintiff and Class Members seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**THIRD CLAIM**
**Violation of California's Consumers Legal Remedies Act,**
**Cal. Civ. Code § 1750,** *et seq.*

83. The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

84. Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate sections of the CLRA, including:

    a. Civil Code § 1770(a)(5), because Defendant represented that the Product had characteristics, attributes, features, capabilities, uses,

benefits, and qualities it did not have;

b.  Civil Code § 1770(a)(9), because Defendant advertised the Product with an intent not to sell it as advertised; and

c.  Civil Code § 1770(a)(16), because Defendant represented that the Product had been supplied in accordance with its previous representations, when it was not.

85. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details and includes these violations of the CLRA, demand correction of these violations, and provide the opportunity to correct these business practices.

86. If Defendant does not correct these business practices, Plaintiff will amend or seek leave to amend the Complaint to add claims for monetary relief, including restitution and actual damages under the CLRA.

87. If Defendant does not correct these business practices, Plaintiff will request injunctive relief and ask that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

## FOURTH CLAIM
### Breaches of Express Warranty and
### Implied Warranty of Merchantability/Fitness for a Particular Purpose

88. The Product was manufactured, identified, marketed, distributed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

89. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

90. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

91. Defendant's representations about the Product were conveyed in writing and

promised it would be defect-free, and Plaintiff understood this meant that it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

92. Defendant's representations affirmed and promised that the Product functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

93. Defendant described the Product so Plaintiff believed it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients, which became part of the basis of the bargain that it would conform to its affirmations and promises.

94. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

95. This duty is based on Defendant's outsized role in the market for this type of Product, the preeminent company in the area of herbal lozenges.

96. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

97. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

98. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

99. The Product did not conform to its promises or affirmations of fact due to Defendant's actions.

100. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients.

101. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it functioned as a cough suppressant and oral anesthetic due to the presence of herbal ingredients, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

**FIFTH CLAIM**

**Unjust Enrichment**

102. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, pray for judgment and relief on all of the legal claims as follows:

A. Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's Counsel as counsel for the Class;

B. A declaration that Defendant has committed the violations alleged;

C. For any and all injunctive relief the Court deems appropriate;

D. For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

E. An award of compensatory damages, the amount of which is to be determined at trial, except for monetary damages under the CLRA;

F. For punitive damages;

G. For attorneys' fees;

H. For costs of suit incurred;

I. For pre- and post-judgment interest at the legal rate on the foregoing sums; and

J. For such further relief as this Court may deem just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action so triable.

Dated: June 16, 2023

Respectfully submitted,

/s/ Kyle Gurwell

Kyle Gurwell (SBN 289298)
**LAW OFFICE OF KYLE GURWELL**
7755 Center Ave Ste 1100
Huntington Beach CA 92647
(714) 372-2245

kng@lawofficekg.com

Spencer Sheehan (*Pro Hac Vice* Forthcoming)
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff and Proposed Class*